| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Brandon J Iskander<br>Goe Forsythe & Hodges LLP<br>17701 Cowan<br>Building D<br>Suite 210<br>Irvine, CA 92614<br><br>949-798-2460<br><br><br>_Plaintiff or Attorney for Plaintiff_ | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE

| In re:<br><br>Tito Barrientos<br><br><br>Debtor(s). | CASE NO.: 6:23-bk-11468-MH<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 6:23-ap-01080-MH |
|---|---|
| Robert S. Whitmore<br><br>Plaintiff(s)<br>Versus<br>Olga Lilia Barrientos<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper-left–hand corner of this page. The deadline to file and serve a written response is **08/25/2023.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **September 27, 2023** |
| **Time:** | **02:00 PM** |
| **Hearing Judge:** | **Mark D. Houle** |
| **Location:** | **3420 Twelfth St., Crtrm 301, Riverside, CA 92501** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2016_                          Page 1                  **F 7004–1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: July 26, 2023

By: _____ "s/" John Craig _____

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1    Robert P. Goe – State Bar No. 137019
Brandon J. Iskander – State Bar No. 300916
2    **GOE FORSYTHE & HODGES LLP**
177011 Cowan Avenue, Suite 210, Bldg. D
3    Irvine, CA 92614
rgoe@goeforlaw.com
4    biskander@goeforlaw.com
Telephone:  (949) 798-2460
5    Facsimile:   (949) 955-9437

6    Proposed Attorneys for Plaintiff Robert S. Whitmore,
Chapter 7 Trustee
7

8                **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

10

| | |
|---|---|
| In re:<br><br>TITO BARRIENTOS,<br><br>            Debtor.<br><br>────────────────────<br><br>ROBERT S. WHITMORE, solely in his capacity as chapter 7 trustee for the bankruptcy estate of TITO BARRIENTOS,<br><br>            Plaintiff,<br><br>v.<br><br>OLGA LILIA BARRIENTOS, an individual,<br><br>            Defendant. | Case No.  6:23-bk-11468-MH<br><br>Chapter 7 Proceeding<br><br>Adv. No.: 6:23-ap-_____-MH<br><br>**COMPLAINT FOR:**<br><br>1.  **AVOIDANCE AND RECOVERY OF INTENTIONAL FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.07];**<br><br>2.  **AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.05, 3439.07];**<br><br>3.  **DECLARATORY RELIEF [11 U.S.C. §§ 544, 548; FED. R. BANKR. P. 7001(9)];**<br><br>4.  **UNJUST ENRICHMENT [11 U.S.C. § 105];**<br><br>5.  **DISALLOWANCE OF CLAIMS [11 U.S.C § 502(d)]; AND**<br><br>6.  **TURNOVER OF PROPERTY OF THE ESTATE [11 U.S.C. § 542].** |

1

Robert S. Whitmore ("Trustee"), solely in his capacity as the duly-appointed, qualified, and acting Chapter 7 trustee ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of Tito Barrientos ("Debtor"), hereby brings this Complaint against Olga Lilia Barrientos ("Defendant") and respectfully complains and alleges as follows:

## I.    <u>SUBJECT MATTER JURISDICTION AND VENUE</u>

1.    This adversary proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure, Rules 7001(1) (a proceeding to recover money or property) and (9) (a proceeding to obtain a declaratory judgment relating to any of the foregoing).

2.    Plaintiff, as Trustee for the Debtor's bankruptcy estate ("Estate") has standing to bring this action under 11 U.S.C. §§ 323, 544, 548, and 550.

3.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the Debtor's bankruptcy pending in the United States Bankruptcy Court for the Central District of California, Riverside Division entitled *In re Tito Barrientos*, Case No. 6:23-bk-11468-MH on the Court's docket.

4.    This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the Estate), and (b)(2)(H) (proceeding to determine, avoid or recover fraudulent conveyances).

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises under Title 11, or relates to a case under Title 11, which is pending in this District and does not involve a consumer debt less than $22,700.00.

6.    Venue in this judicial district is appropriate under 28 U.S.C. §§ 1409(a) and/or (c) because Debtor's bankruptcy case is pending in the Central District of California.

7.    To the extent that the Plaintiff asserts claims under 11 U.S.C. § 544, the Plaintiff is informed and believes and based thereon alleges that there exists in this case one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or are not allowable under 11 U.S.C. § 502(e), who can avoid the respective transfers as set forth hereinafter under California or other applicable law.

## II.    THE PARTIES

8.    Plaintiff is the duly-appointed, qualified, and acting Chapter 7 Trustee for the Debtor's Estate and brings the claims asserted herein solely in that capacity.

9.    Plaintiff is informed and believes and based thereon alleges that Olga Lilia Barrientos ("Defendant"), is an individual residing in San Bernardino County, California and is the former spouse of the Debtor.  Defendant is the initial transferee of all transfers (defined below).

## III.    GENERAL ALLEGATIONS

10.    The allegations contained in paragraphs 1-9, inclusive, are re-alleged and incorporated herein by this reference, as though set forth in full.

11.    At all relevant times alleged herein, the Defendant is an individual residing in San Bernardino County, California.

12.    Beginning January 16, 2013, Debtor owned the real property located at 14429 Joaquin Way, Victorville, CA 92394 ("Property"). Debtor took title to the Property via Grant Deed recorded on January 16, 2013 in the Official Records of the San Bernardino County Recorder's Office, with title vesting in: "Tito E. Barrientos, a Married Man as His Sole and Separate Property." A true and correct copy of the January 2013 Grant Deed is attached hereto and incorporated herein as **Exhibit "1."**

**13.**    Also on January 16, 2013, Defendant signed and caused to be recorded in the Official Records of the San Bernardino County Recorder's Office an Interspousal Grant Deed for the Property conveying "all right, title, and interest . . . , community or otherwise, in and to [the Property] to the grantee as his sole and separate property."  A true and correct copy of the January 2013 Interspousal Grant Deed is attached hereto and incorporated herein as **Exhibit "2."**

14.    Also on January 16, 2013, a deed of trust for the Property in favor of Choice Lending Corp identifying the borrower "Tito E. Barrientos, a Married Man as his Sole and Separate Property" was recorded in the Official Records of the San Bernardino County Recorder's Office. A true and correct copy of the January 2013 Deed of Trust is attached hereto and incorporated herein as **Exhibit "3."**

3

15.     An interspousal grant deed is a transmutation of community property into the separate property of the grantee spouse. *Kushesh v. Kushesh-Kaviani*, 27 Cal. App. 5th 449 (2018). Accordingly, the Property was at all times Debtor's sole and separate property until the date of the First Transfer described *infra*.

16.     Pursuant to California Evidence Code § 622, "[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration." Accordingly, from January 16, 2013 until the date of the First Transfer described *infra*, the Property was at all times Debtor's sole and separate property in which Defendant had no legal or equitable interest.

17.     On October 28, 2020, Debtor commenced a marital dissolution proceeding against Defendant in the Imperial County Superior Court, commencing *Barrientos v. Barrientos*, Case No. EFL003065 ("Dissolution Proceeding").

18.     On May 2, 2022, the Imperial County Superior Court entered a stipulated judgment signed by Debtor and Defendant which allocated property among the parties as follows ("First Transfer"):

  a.  Defendant received (1) any and all furniture, furnishings, appliances, and other personal property in her possession, (2) the Property along with all encumbrances thereon, (3) any and all bank accounts in her name, (4) one half of the community property interest in Debtors Federal Employees' Retirement System (FERS) account to be divided pursuant to Brown's Time Rule from date of marriage November 25, 1994 to date of separation February 16, 2021, (6) a 2019 Toyota Avalon and any debt thereon, (7) a 1990 Mazda Miata, (8) a 2004 Ford Tacoma, (9) a 2012 Toyota Highlander, (10) a 2017 Toyota Corolla and any encumbrance thereon, and (11) a 2019 Toyota Camry and any encumbrance thereon.

  b.  Debtor received (1) any and all furniture, furnishings, appliances and other personal property in his possession, (2) a 2006 GMC Yukon, (3) any and all

bank accounts in his name, (4) one half of the community property interest in Debtors Federal Employees' Retirement System (FERS) account to be divided pursuant to Brown's Time Rule from date of marriage November 25, 1994 to date of separation February 16, 2021, and (5) one-half of the community property interest in Debtor's Federal Thrift Savings Plan (TSP) account to be divided pursuant to Brown's Time Rule from date of marriage November 25, 1994 to date of separation February 16, 2021.

19.     A true and correct copy of the stipulated judgment entered by the Imperial County Superior Court in the Dissolution Action is attached hereto and incorporated herein as **Exhibit "4."**

20.     The First Transfer as described in Paragraph 18 was of the Debtor's property, including his sole and separate property interest in the Property.

21.     The First Transfer was vastly unequal and deprived Debtor and his bankruptcy Estate of all or nearly all nonexempt assets.

22.     At the time of the First Transfer, Debtor had been the sole owner of the Property for more than nine (9) years.

23.     The Trustee is informed and believes and based thereon alleges that at the time of the First Transfer, the Property was worth at least $400,000 and as of the date of this Complaint, the Property is now worth at least $430,000.

24.     On January 27, 2023, Debtor transferred the Property via Grant Deed to the Defendant recorded in the Official Records of the San Bernardino County Recorder's Office as Document No. 2023-0020125 from himself as "Ex-Spouse of the Grantee Herein" to Defendant "an unmarried woman" ("January 2023 Grant Deed" or "Second Transfer").  A true and correct copy of the January 2023 Grant Deed that constitutes the Second Transfer is attached hereto and incorporated herein as **Exhibit "5."**

25.     On April 11, 2023 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

26.     Plaintiff is continuing his investigation to determine whether additional avoidable

transfers were made to the Defendant during the four years prior to the Petition Date and reserves the right to amend this Complaint to recover any such additional avoidable transfers. Plaintiff is informed and believes and based thereon alleges that any funds paid to the Defendant during the four years prior to the Petition Date were fraudulent and are recoverable by Plaintiff under the Bankruptcy Code.

## FIRST CLAIM FOR RELIEF

**[Avoidance and Recovery of Intentional Fraudulent Transfer with an Automatic Preservation for the Estate]**

**[11 U.S.C. §§ 544, 548, 550, 551; Cal. Civ. Code §§ 3439.04, 3439.07]**

27.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

28.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 are of the Debtor's property.

29.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 were made on or within four (4) years of the Petition Date, but in no even longer than seven (7) years prior to the Petition Date.

30.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 were for no consideration or for less than reasonably equivalent value.

31.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 were to or for the benefit of an insider of the Debtor.

32.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 were of substantially all of the Debtor's assets.

33.    By making the First Transfer and Second Transfer as alleged in paragraphs 18 and 24, Debtor removed or concealed assets.

34.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said Transfers.

35.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 occurred shortly before or shortly after Debtor incurred a substantial debt.

36.    Based on the foregoing, Plaintiff may avoid the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 and said Transfers or recover the equivalent value of the Transfers with an automatic preservation for the Estate from the Defendant, for whose benefit the aforementioned First Transfer and subsequent Transfers were made pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and California Civil Code §§ 3439.04 and 3439.07.

## SECOND CLAIM FOR RELIEF

**[Avoidance and Recovery of Constructive Fraudulent Transfer with an Automatic Preservation for the Estate]**

**[11 U.S.C. §544, 548, 550, 551; Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, and 3439.09]**

37.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

38.    Plaintiff is informed and believes, and based thereon alleges, that there are present creditors of the Debtor that were listed at the time of the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 that still remain unpaid as of the Petition Date.

39.    Plaintiff is informed and believes, and based thereon alleges, that future creditors of the Debtor existed following the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 who remain unpaid as of the Petition Date.

40.    The First Transfer and Second Transfer as alleged in paragraphs 18 and 24 were made on or within four (4) years of the Petition Date, but in no even longer than seven (7) years prior to the Petition Date.

41.    Plaintiff is informed and believes, and based thereon alleges, that the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 were made:

a.    For less than reasonably equivalent value, or any value, in exchange for said First Transfer and Second Transfer as alleged in paragraphs 18 and 24; and

b.    At a time when Debtor was insolvent and/or was rendered insolvent by virtue of said First Transfer and Second Transfer as alleged in paragraphs 18 and 24; and/or

c.    While Debtor was engaged or about to engage in a business or a transaction

7

for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; and/or

    d.   While the Debtor intended to incur, or believed, or reasonably should have believed the Debtor would incur debts beyond the Debtor's ability to pay them as they became due.

42.    Based on the foregoing, Plaintiff may avoid the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 and recover said First Transfer and subsequent Transfers or the equivalent value of the First Transfer and Subsequent Transfers with an automatic preservation for the Estate from the Defendant, for whose benefit the aforementioned transfers were made pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and California Civil Code §§ 3439.04, 3439.05, 3439.07, and 3439.09.

**THIRD CLAIM FOR RELIEF**

**[Declaratory Relief]**

**[11 U.S.C. §§ 544, 548; Fed. R. Bankr. P. 7001(9)]**

43.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

44.    Plaintiff and Defendant herein have a dispute in which a declaration of their respective rights is necessary.  Plaintiff is further informed and believes, and thereon alleges, that the said dispute is actual and continuing, and concerns an assertion by Defendant that she may have an equitable interest in the Property and may assert claims herein, retain the benefits of acts of other defendants herein, and/or adopt and ratify the said acts, to the damage and prejudice of Plaintiff.

45.    Plaintiff is further informed and believes, and thereon alleges, that the said dispute is actual and continuing, and concerns the continuing assertion by Defendant that she owns the Property as her sole property, to the damage and prejudice of Plaintiff.

46.    Plaintiff is informed and believes and thereon alleges that prior to the First Transfer and Second Transfer as alleged in paragraphs 18 and 24, title to the Property was vested in the Debtor and was his sole and separate property to the exclusion of Defendant.

47.    Plaintiff is informed and believes that all appreciation in the Property inures to the benefit of the Estate.

48.    Based on all of the above, Plaintiff respectfully requests from this Court a declaration that the Property is property of the Estate pursuant to Section 541 of the Bankruptcy Code and that the Property must be turned over to be used and sold by the Trustee pursuant to Sections 363 and 542 of the Bankruptcy Code.

49.    The Plaintiff is entitled to declaratory relief related to this cause of action for the recovery of money or property, other than a proceeding to compel the Debtor to deliver property to the Trustee, or a proceeding under 11 U.S.C. §§ 554(b), 725, Rule 2017, or Rule 6002.

## FOURTH CLAIM FOR RELIEF

### [Unjust Enrichment]

### [11 U.S.C. § 105]

50.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

51.    The Defendant received a benefit through the First Transfer and Second Transfer as alleged in paragraphs 18 and 24, and Defendant's retention of the aforementioned Transfers and/or the value of said Transfers results in an unjust retention of said benefit at the Estate's expense.

## FIFTH CLAIM FOR RELIEF

### [Disallowance of Claims]

### [11 U.S.C. § 502(d)]

52.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

53.    Defendant is an entity from which property is recoverable under 11 U.S.C. § 550 and Defendant received an avoidable transfer under 11 U.S.C. §§ 544 and/or 548.

54.    Defendant has not paid the amount or turned over any such property for which Defendant is liable under 11 U.S.C. §522(i), 542, 543, 550, 553 of the Bankruptcy Code.

55.    Pursuant to 11 U.S.C. §502(d), to the extent Defendant files a claim against the

Debtor's Estate, such claim should be disallowed.

## SIXTH CLAIM FOR RELIEF

### [Turnover of Property of the Estate]

### [11 U.S.C. § 542]

56.    Plaintiff hereby incorporates by reference paragraphs 1 through 51 and realleges these paragraphs as though set forth in full.

57.    Plaintiff is entitled to use, sell, or lease the Estate's legal and equitable interests in the Property under 11 U.S.C. § 363.

58.    Defendant shall deliver to the Plaintiff, and account for, within fourteen (14) days of the entry of Judgment in Plaintiff's favor all legal and equitable interests in the Property, or the value of the Property, unless the Property is of inconsequential value or benefit to the Estate.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee prays for Judgment as follows:

### ON THE FIRST CLAIM FOR RELIEF

1.    Avoiding the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 and declaring that said Transfers be annulled and rendered void as actual fraudulent transfers, and entering an order recovering and preserving said Transfers for the benefit of the Estate, or the value of said Transfers for the benefit of the Estate, together with interest thereon at the legal rate from the date of the First Transfer;

### ON THE SECOND CLAIM FOR RELIEF

2.    Avoiding the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 and declaring that said Transfers be annulled and rendered void as constructive fraudulent transfers, and entering an order recovering and preserving said Transfers for the benefit of the Estate, or the value of said Transfers for the benefit of the Estate, together with interest thereon at the legal rate from the date of the First Transfer;

### ON THE THIRD CLAIM FOR RELIEF

3.    Stating a declaration that the Property is property of the Estate pursuant to Section

541 of the Bankruptcy Code; and

     4.     Finding that all appreciation in the Property inures to the benefit of the Estate;

### ON THE FOURTH CLAIM FOR RELIEF

     5.     Declaring that the Defendant was unjustly enriched by the Transfers described herein, and entering an order recovering and preserving the First Transfer and Second Transfer as alleged in paragraphs 18 and 24 for the benefit of the Estate, or the value of the aforementioned Transfers for the benefit of the Estate, together with interest thereon at the legal rate from the date of the Transfers;

### ON THE FIFTH CLAIM FOR RELIEF

     6.     Disallowing any claims of the Defendant if she fails or refuses to turn over the Property, and/or the value of the Property, pursuant to 11 U.S.C. § 502(d);

### ON THE SIXTH CLAIM FOR RELIEF

     7.     Granting turnover of all legal and equitable interests in the Property by no later than fourteen (14) days after entry of Judgment in favor of the Plaintiff.

### ON ALL CLAIMS FOR RELIEF

     8.     For interest at the applicable legal rate;

     9.     For attorney's fees and costs of suit herein incurred; and

     10.     For such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated: July 25, 2023               Respectfully submitted by,

                                 **GOE FORSYTHE & HODGES LLP**

                                 By: /s/ Brandon J. Iskander
                                    Robert P. Goe
                                    Brandon J. Iskander
                                    Proposed Attorneys for Plaintiff Robert S.
                                    Whitmore, Chapter 7 Trustee

# EXHIBIT 1

# EXHIBIT 1

RECORDING REQUESTED BY:
Fidelity National Title

WHEN RECORDED MAIL DOCUMENT AND
TAX STATEMENT TO:

Tito Barrientos

2433 Ohare Ct
Imperal CA 92251

Electronically Recorded in Official Records, County of San Bernardino

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
743  Fidelity National Title Co.

1/16/2013
09:38 AM
SG

Doc #: **2013-0021003**

| | | |
|---|---|---|
| Titles: | 1 | Pages: | 1 |

| | |
|---|---|
| Fees | 15.00 |
| Taxes | 144.65 |
| Other | .00 |
| PAID | 159.65 |

APN:  0394-144-02
TITLE ORDER NO.: 33421096
ESCROW NO.: 8611-PB

THIS SPACE FOR RECORDER'S USE ONLY

### GRANT DEED

The undersigned Grantor(s) declare that the **DOCUMENTARY TRANSFER TAX IS:**
**$ 144.65 County**
XX  computed on the full value of the interest of property conveyed, or
___ computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale.
___ OR transfer is EXEMPT from tax for the following reason

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** Mario Alfredo Polanco and Jacqueline Polanco

**HEREBY GRANT(S) to** Tito E. Barrientos, a Married Man as His Sole and Separate Property

All that real property situated in the City of Victorville, County of San Bernardino, State of California, described as:
Lot 40 of Tract No. 16943 as per map recorded in Book 318, Pages 62-67 inclusive, in the office of the county recorder of said county.

**Commonly Known As:** 14429  Joaquin Way, Victorville, CA  92394

Dated: November 29, 2012

STATE OF CALIFORNIA                             }
COUNTY OF  San Bernardino          }

On December 15, 2012, before me,
Christina E. Hernandez, notary public
(here insert name and title of the officer)

personally appeared Mario Alfredo Polanco
and Jacqueline Polanco
who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of
the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.
Signature _____

_____
Mario Alfredo Polanco

_____
Jacqueline Polanco

**CHRISTINA E. HERNANDEZ**
Commission No. 1949093
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires SEPTEMBER 15, 2015

(SEAL)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT "1"

# EXHIBIT 2

# EXHIBIT 2

RECORDING REQUESTED BY:
Fidelity National Title

WHEN RECORDED MAIL DOCUMENT AND
TAX STATEMENT TO:

Tito Barrientos
2433 Ohare
Imperial CA 92251

APN: 0394-144-02
TITLE ORDER NO.: 33421096
ESCROW NO.: 8611-PB

Electronically Recorded in Official Records, County of San Bernardino      1/16/2013
09:38 AM
SG



DENNIS DRAEGER
ASSESSOR - RECORDER - CLERK
743  Fidelity National Title Co.

Doc #:  **2013-0021004**        Titles:  1      Pages:  1

| Fees  | 15.00 |
|-------|-------|
| Taxes | .00   |
| Other | .00   |
| PAID  | 15.00 |

THIS SPACE FOR RECORDER'S USE ONLY

## INTERSPOUSAL GRANT DEED
(Excluded from reappraisal under California Constitution Article 13A §1 et seq.)

The undersigned Grantor(s) declare(s) that the **DOCUMENTARY TRANSFER TAX IS: ***0***
\*\*\*This conveyance establishes the sole and separate property of a spouse, and the Grantor
received nothing in return, R&T 11911.\*\*\*

This is an interspousal transfer and not a change in ownership under §63 of the Revenue and Taxation Code.

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Olga Barrientos, spouse of Grantee**

**HEREBY GRANTS to Tito E. Barrientos, a married man as his sole and separate property**

all that real property situated in the City of Victorville, County of San Bernardino, State of California, described as: Lot 40 of Tract No. 16943 as per map recorded in Book 318, Pages 62-67 inclusive, in the office of the county recorder of said county.

**Commonly Known As: 14429 Joaquin Way, Victorville, CA 92394**

It is the express intent of the Grantor, being the spouse of the Grantee, to convey all right, title and interest of the Grantor, community or otherwise, in and to the herein described property to the grantee as his sole and separate property

Dated: November 29, 2012

STATE OF CALIFORNIA                                }
COUNTY OF ___IMPERIAL___                           }

On ___12-10-12___, before me,
___Marco F. Martinez, Notary Public___
(here insert name and title of the officer)

personally appeared ___Olga Barrientos___
_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MAIL TAX STATEMENT AS DIRECTED ABOVE

Olga Barrientos
O.B.
12-10-12

M. F. MARTINEZ
Commission # 1859693
Notary Public - California
Imperial County
My Comm. Expires Aug 1, 2013

(SEAL)

EXHIBIT "2"

# EXHIBIT 3

# EXHIBIT 3

FNT—1E
3342109(6)

Recording Requested By:
CHOICE LENDING CORP



**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
743  Fidelity National Title Co.

Electronically Recorded in Official Records, County of San Bernardino   1/16/2013
09:38 AM
SG

**Doc #:**  **2013-0021005**   Titles:  1   Pages:  19

| | |
|---|---|
| Fees | 69.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 69.00 |

And After Recording Return To:
CHOICE LENDING CORP
12640 HESPERIA ROAD, SUITE D
VICTORVILLE, CALIFORNIA 92395
Loan Number:       0002

—————————— [Space Above This Line For Recording Data] ——————————

# DEED OF TRUST

**MIN:**              0002-8                      **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated  JANUARY 2, 2013          , together with all Riders to this document.
**(B)  "Borrower"** is  TITO E. BARRIENTOS, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY.
BORROWER'S ADDRESS IS 2433 OHARE COURT, IMPERIAL, CA 92251.


Borrower is the trustor under this Security Instrument.
**(C)  "Lender"** is  CHOICE LENDING CORP

Lender is a   CALIFORNIA CORPORATION                                        organized
and existing under the laws of  CALIFORNIA
Lender's address is   12640 HESPERIA ROAD, SUITE D, VICTORVILLE,
CALIFORNIA 92395

**(D)  "Trustee"** is   FIDELITY NATIONAL TITLE COMPANY
451 E VANDERBILT WAY, SUITE #350, SAN BERNARDINO, CALIFORNIA
92408
**(E)  "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)  "Note"** means the promissory note signed by Borrower and dated  JANUARY 2, 2013        .

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                      Page 1 of 14

**DocMagic eForms**
www.docmagic.com

EXHIBIT "3"                                      Page 1 of 20

The Note states that Borrower owes Lender  ONE HUNDRED FIVE THOUSAND TWO HUNDRED AND 00/100               Dollars (U.S. $ 105,200.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1, 2043 .

**(G)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☒ Second Home Rider | |
| ☐ Condominium Rider | ☐ Other(s) [specify] | |

**(J)  "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)  "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)  "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)  "Escrow Items"** means those items that are described in Section 3.

**(N)  "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)  "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)  "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)  "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)  "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01
Page 2 of 14

*DocMagic eForms*
*www.docmagic.com*

EXHIBIT "3"                    Page 2 of 20

the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY               of          SAN BERNARDINO         :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 0394-144-02-0-000

which currently has the address of  14429 JOAQUIN WAY
                                                                    [Street]

VICTORVILLE               , California        92394        ("Property Address"):
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.  Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.  Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01
Page 4 of 14

DocMagic *eForms*
www.docmagic.com

EXHIBIT "3"                                                                    Page 4 of 20

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed

by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01
Page 7 of 14

DocMagic *eForms*
www.docmagic.com

EXHIBIT "3"                                                                 Page 7 of 20

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01
Page 9 of 14

*DocMagic EForms*
*www.docmagic.com*

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    *DocMagic ℰ𝐹𝑜𝑟𝑚𝑠*
Form 3005  01/01                                          Page 10 of 14                              *www.docmagic.com*

EXHIBIT "3"                                                                          Page 10 of 20

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01
Page 12 of 14

*DocMagic eForms*
*www.docmagic.com*

EXHIBIT "3"

Page 12 of 20

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)          _____ (Seal)
TITO E.  BARRIENTOS      -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower


Witness:                              Witness:

_____                 _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        *DocMagic eForms*
Form 3005  01/01                       Page 13 of 14                                www.docmagic.com

————————————————— [Space Below This Line For Acknowledgment] —————————————————

State of  CALIFORNIA                )
                                    ) ss.
County of  SAN BERNARDINO           )

On  *1-4-13*  before me,  *Christine Schweiter,*
                          *Notary Public*

personally appeared  TITO E. BARRIENTOS

———————————————————————————————————————————————————

———————————————————————————————————————————————————  ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CHRISTINE SCHWEITER
COMM. #1844159
Notary Public • California
Riverside County
Comm. Expires Apr 11, 2013

NOTARY SEAL

*Christine Schuls*
NOTARY SIGNATURE

*Christine Schweiter, Notary*
(Typed Name of Notary)

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 2nd  day of  JANUARY  2013  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower,"
whether there are one or more persons undersigned) to secure Borrower's Note to CHOICE
LENDING CORP, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

> 14429 JOAQUIN WAY, VICTORVILLE, CALIFORNIA 92394
> [Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with the
Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01                              Page 1 of 2

DocMagic EForms
www.docmagic.com

EXHIBIT "3"                                                    Page 15 of 20

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)          _____ (Seal)
TITO E. BARRIENTOS         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

MULTISTATE SECOND HOME RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01                                    Page 2 of 2

DocMagic *eForms*
www.docmagic.com

EXHIBIT "3"                                    Page 16 of 20

Loan Number:        0002

Date: JANUARY 2, 2013

Property Address:  14429 JOAQUIN WAY
                   VICTORVILLE, CALIFORNIA 92394

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VICTORVILLE, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOW:

LOT 40 OF TRACT NO. 16845, CITY OF VICTORVILLE, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 328 OF TRACT MAPS, PAGES 62 THROUGH 67 INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM NON-EXCLUSIVE EASEMENTS LOCATED ON SUCH LOT IF AND AS DESCRIBED AND/OR FURTHER PROVIDED FOR IN THE DECLARATION REFERRED TO BELOW, ANY OTHER EASEMENTS SHOWN ON THE TRACT MAP OF RECORD, REFERENCED ABOVE, LOCATED ON SUCH LOT AND SUCH OTHER EASEMENTS AS MAY BE OF RECORD AS OF THE DATE HEREOF.

FURTHER EXCEPTING THEREFROM FOR THE BENEFIT OF GRANTOR, ITS SUCCESSOR IN INTEREST AND ASSIGNEES, TO THE EXTENT NOT ALREADY RESERVED BY INSTRUMENTS OF RECORD:

A. ALL OIL RIGHTS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND RIGHTS TO ALL OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, TO ALL GEOTHERMAL HEAT AND TO ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING (COLLECTIVELY "SUBSURFACE RESOURCES")

B. THE PERPETUAL RIGHT TO DRILL, MINE, EXPLORE AND OPERATE FOR, AND TO PRODUCE, STORE AND REMOVE ANY OF THE SUBSURFACE RESOURCES ON OR FROM THE LOT, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LOT, WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LOT, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS WITHIN OR BEYOND THE EXTERIOR LIMITS OF THE LOT, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES, BUT WITHOUT THE RIGHT TO DRILL, MINE, EXPLORE, OPERATE, PRODUCE, STORE OR REMOVE ANY OF THE SUBSURFACE RESOURCES THROUGH OR IN THE SURFACE OR THE UPPER FIVE HUNDRED FEET (500') OF THE SUBSURFACE OF THE LOT; AND

C. ALL WATER AND WATER RIGHT, IF ANY, WITHIN AND UNDERLYING THE LOT.

THE REAL PROPERTY CONVEYED IN THIS GRANT DEED (THE "PROPERTY") IS CONVEYED AND ACCEPTED SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS, AND RESERVATION OF EASEMENTS FOR LAS HACIENDAS RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, CALIFORNIA, ON MARCH 26, 2006, AS DOCUMENT NO. 2006-0179210 AND ANY AMENDMENTS THERETO NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED AND ANY SUPPLEMENTARY DECLARATIONS NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED (COLLECTIVELY THE "DECLARATION"), ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE TO THIS GRANT DEED WITH THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREIN.

THE PROPERTY IS CONVEYED AND ACCEPTED SUBJECT TO THAT CERTAIN NOTICE OF NON-ADVERSARIAL PROCEDURE, NOTICE TO SUCCESSORS IN INTEREST AND NOTICE OF NON-ADVERSARIAL PROCEDURE, NOTICE TO SUCCESSORS IN INTEREST AND NOTICE OF BUILDERS AGENT FOR NOTICE UNDER CALIFORNIA CIVIL CODE SECTION 912(H), 912(B) AND 912(E) ("NOTICE") WHICH DECLARATION OF COVENANTS AND NOTICE ARE RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, CALIFORNIA AND ANY AMENDMENTS THERETO NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED, ALL OF WHICH ARE INCORPORATED HERE BY REFERENCE WITH THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREIN.

A.P.N. # : 0394-144-02-0-000

**DocMagic eForms**
www.docmagic.com

Ca3005.mzd.xml

Order No. 33421096 - A

# LEGAL DESCRIPTION
## EXHIBIT "ONE"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF VICTORVILLE, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 40 OF TRACT NO. 16943, CITY OF  VICTORVILLE, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 318 OF TRACT MAPS, PAGES 62 THROUGH 67, INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM NON-EXCLUSIVE EASEMENTS LOCATED ON SUCH LOT, IF ANY, AS DESCRIBED AND FURTHER PROVIDED FOR IN THE DECLARATION REFERRED TO BELOW, ANY OTHER EASEMENTS SHOWN ON THE TRACT MAP OF RECORD REFERENCED ABOVE LOCATED ON SUCH LOT AND SUCH OTHER EASEMENTS AS MAY BE OF RECORD AS OF THE DATE HEREOF.

FURTHER EXCEPTING THEREFROM, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSOR IN INTEREST AND ASSIGNEES, TO THE EXTENT NOT ALREADY RESERVED BY INSTRUMENTS OF RECORD:

A. ALL OIL RIGHTS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND RIGHTS TO ALL OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, TO ALL GEOTHERMAL HEAT AND TO ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING (COLLECTIVELY "SUBSURFACE RESOURCES");

B. THE PERPETUAL RIGHT TO DRILL, MINE, EXPLORE AND OPERATE FOR AND TO PRODUCE, STORE AND REMOVE ANY OF THE SUBSURFACE RESOURCES ON OR FROM THE LOT, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LOT, WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LOT, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS WITHIN OR BEYOND THE EXTERIOR LIMITS OF THE LOT, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR DEEPEN AND OPERATE ANY SUCH WELLS OR MINES, BUT WITHOUT THE RIGHT TO DRILL, MINE, EXPLORE, OPERATE, PRODUCE, STORE OR REMOVE ANY OF THE SUBSURFACE RESOURCES THROUGH OR IN THE SURFACE OR THE UPPER FIVE HUNDRED FEET (5001) OF THE SUBSURFACE OF THE LOT; AND

C. ALL WATER AND WATER RIGHT, IF ANY, WITHIN AND UNDERLYING THE LOT.

THE REAL PROPERTY CONVEYED IN THIS GRANT DEED (THE "PROPERTY") IS CONVEYED AND ACCEPTED SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS, AND RESERVATION OF EASEMENTS FOR LAS HACIENDAS, RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, CALIFORNIA ON MARCH 26, 2006, AS DOCUMENT NO. 2006-0179210 AND ANY AMENDMENTS THERETO NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED, AND ANY SUPPLEMENTARY DECLARATIONS NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED (COLLECTIVELY, THE "DECLARATION"), ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE TO THIS GRANT DEED WITH THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREIN.

THE PROPERTY IS CONVEYED AND ACCEPTED SUBJECT TO THAT CERTAIN NOTICE OF

Order No. 33421096 - A

NON- ADVERSARIAL PROCEDURE, NOTICE TO SUCCESSORS IN INTEREST, AND NOTICE OF NON-ADVERSARIAL PROCEDURE, NOTICE TO SUCCESSORS. IN INTEREST, AND NOTICE OF BUILDERS AGENT FOR NOTICE UNDER CALIFORNIA CIVIL CODE SECTION 912(F), 912(H), AND 912(E) ("NOTICE"), WHICH DECLARATION OF COVENANTS AND NOTICE ARE RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, CALIFORNIA AND ANY AMENDMENTS THERETO NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED, ALL OF WHICH ARE INCORPORATED HERE BY REFERENCE WITH THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREIN.

Assessor's Parcel No: 0394-144-02-0-000

# EXHIBIT 4

# EXHIBIT 4

APR 2 2 2022          FL-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Raj P. Singh, SBN: 269097<br>WILLIAMS & SINGH, LLP<br>1430 Broadway, El Centro, CA. 92243<br>TELEPHONE NO.: (760) 994-4992     FAX NO. *(Optional):* (760) 589-1006<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Olga Barrientos | ENDORSED<br>MAY 02 2022<br>SUPERIOR COURT<br>COUNTY OF IMPERIAL<br>MARIA RHINEHART, CLERK<br>BY E. MUNOZ DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF IMPERIL
STREET ADDRESS: 939 W. Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: El Centro, 92243
BRANCH NAME:

MARRIAGE OR PARTNERSHIP OF
PETITIONER: Tito Erick Barrientos

RESPONDENT: Olga Barrientos

| **JUDGMENT** | CASE NUMBER: |
|---|---|
| [✓] DISSOLUTION   [ ] LEGAL SEPARATION   [ ] NULLITY<br>[ ] Status only<br>[ ] Reserving jurisdiction over termination of marital or domestic partnership status<br>[ ] Judgment on reserved issues<br>Date marital or domestic partnership status ends: **MAY 0 2 2022** | EFL003065 |

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) ____ of the attachment. They expire on *(date):*

2. This proceeding was heard as follows: [✓] Default or uncontested [ ] By declaration under Family Code section 2336
   [ ] Contested [ ] Agreement in court
   a. Date: ____ Dept.: ____ Room: ____
   b. Judicial officer *(name):* ____ [ ] Temporary judge
   c. [ ] Petitioner present in court [ ] Attorney present in court *(name):*
   d. [ ] Respondent present in court [ ] Attorney present in court *(name):*
   e. [ ] Claimant present in court *(name):* [ ] Attorney present in court *(name):*
   f. [ ] Other *(specify name):*

3. The court acquired jurisdiction of the respondent on *(date):* 02/24/2021
   a. [✓] The respondent was served with process.
   b. [ ] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. [✓] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons **MAY 0 2 2022**
   (1) [✓] on *(specify date):* **MAY 0 2 2022**
   (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

   d. [ ] This judgment will be entered nunc pro tunc as of *(date):*
   e. [ ] Judgment on reserved issues.
   f. The [ ] petitioner's [ ] respondent's former name is restored to *(specify):*
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

**JUDGMENT**
**(Family Law)**

Family Code, §§ 2024, 2340,
2343, 2346
www.courts.ca.gov

EXHIBIT "4"                Page 1 of 12

FL-180

| CASE NAME (Last name, first name of each party): | CASE NUMBER: |
|---|---|
| Barrientos v. Barrientos | EFL003065 |

4.  i.  ☐  The children of this marriage or domestic partnership are:

(1)  ☐  Name                                     Birthdate

(2)  ☐  Parentage is established for children of this relationship born prior to the marriage or domestic partnership

j.  ☐  Child custody and visitation (parenting time) are ordered as set forth in the attached

(1)  ☐  Settlement agreement, stipulation for judgment, or other written agreement which contains the information required by Family Code section 3048(a).

(2)  ☐  Child Custody and Visitation Order Attachment (form FL-341).

(3)  ☐  Stipulation and Order for Custody and/or Visitation of Children (form FL-355).

(4)  ☐  Previously established in another case. Case number:                    Court:

k.  ☐  Child support is ordered as set forth in the attached

(1)  ☐  Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations required by Family Code section 4065(a).

(2)  ☐  Child Support Information and Order Attachment (form FL-342).

(3)  ☐  Stipulation to Establish or Modify Child Support and Order (form FL-350).

(4)  ☐  Previously established in another case. Case number:                    Court:

l.  ☑  Spousal, domestic partner, or family support is ordered:

(1)  ☐  Reserved for future determination as relates to  ☐  petitioner  ☐  respondent

(2)  ☑  Jurisdiction terminated to order spousal or partner support to  ☑  petitioner  ☐  respondent

(3)  ☑  As set forth in the attached Spousal, Partner, or Family Support Order Attachment (form FL-343).

(4)  ☐  As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.

(5)  ☐  Other (specify):

m.  ☑  Property division is ordered as set forth in the attached

(1)  ☐  Settlement agreement, stipulation for judgment, or other written agreement.

(2)  ☑  Property Order Attachment to Judgment (form FL-345).

(3)  ☐  Other (specify):

n.  ☑  Attorney fees and costs are ordered as set forth in the attached

(1)  ☐  Settlement agreement, stipulation for judgment, or other written agreement.

(2)  ☐  Attorney Fees and Costs Order (form FL-346).

(3)  ☑  Other (specify): Each party shall be responsible for their own attorney's fees.

o.  ☐  Other (specify):

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:                                    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

5.  Number of pages attached: _____                    JUDICIAL OFFICER
                                            ☑  SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-343

| PETITIONER: Tito Erick Barrientos | CASE NUMBER: |
| RESPONDENT: Olga Barrientos | EFL003065 |

## SPOUSAL, DOMESTIC PARTNER, OR FAMILY SUPPORT ORDER ATTACHMENT

TO  ☐ *Findings and Order After Hearing* (form FL-340)      ☑ *Judgment* (form FL-180)
☐ *Restraining Order After Hearing (CLETS-OAH)* (form DV-130)   ☐ *Other* (specify):
☐ *Parties' Stipulation (Written Agreement) dated* (specify): _____

☐ **THE COURT FINDS**      ☑ **THE PARTIES STIPULATE (AGREE)**

*Specify if this attachment is about an order for temporary support or a judgment for permanent support (check either 1 or 2 below).*

1. ☐ **This attachment relates to temporary spousal or domestic partner support.**
    a. ☐ This order attachment modifies an order or agreement for temporary support entered on (date):
    b. **Net income.** The parties' monthly income and deductions are as follows (complete (1), (2), or both):

| | Total gross monthly income | Total monthly deductions | Total hardship deductions | Net monthly disposable income |
|---|---|---|---|---|
| (1) Petitioner: ☐ receiving TANF/CalWORKS | $ | $ | $ | $ |
| (2) Respondent: ☐ receiving TANF/CalWORKS | $ | $ | $ | $ |

    c. ☐ A printout of a computer calculation of the parties' financial circumstances is attached for all required items not filled out above (for temporary support only).

2. ☑ **This attachment relates to a judgment for permanent spousal or domestic partner support.**
    a. ☑ This order attachment modifies a judgment entered on (date): 7/27/2021
    b. ☑ The parties were married for (specify): 2   months and   26   years.
    c. ☐ The parties were registered as domestic partners or the equivalent for (specify):   months and   years.
    d. Family Code section 4320 factors (check either (1) or (2) below, then complete (3)).
       (1) ☐ The parties agreed to some or all of the factors as stated in *Spousal or Domestic Partner Support Declaration Attachment* (form FL-157) or in a similar written declaration filed with the court.
       (2) ☐ The court considered the parties' declarations and supporting documents regarding each Family Code section 4320 factor as stated in testimony, in *Spousal or Domestic Partner Support Declaration Attachment* (form FL-157), or in a similar written declaration filed with the court.
       (3) The parties' agreement, or the court's findings, on Family Code section 4320 factors are (specify):
          (A) ☐ included in Attachment 2d(3)(A).
          (B) ☐ included in *Spousal or Domestic Partner Support Factors Under Family Code Section 4320—Attachment* (form FL-349).
          (C) ☐ specified below:

*THIS IS A COURT ORDER.*

Form Approved for Optional Use
Judicial Council of California
FL-343 [Rev. January 1, 2021]

**SPOUSAL, DOMESTIC PARTNER, OR FAMILY SUPPORT ORDER ATTACHMENT**
**(Family Law)**

Family Code, §§ 150, 299,
3651, 3653, 3654, 4320,
4330, 4337

Page 1 of 3

EXHIBIT "4"

FL-343

| PETITIONER: Tito Erick Barrientos<br>RESPONDENT: Olga Barrientos | CASE NUMBER:<br>EFL003065 |
|---|---|

2. e. ☐ The parties are both self-supporting.

  f. ☐ The standard of living established during the marriage or domestic partnership was *(describe):* ☐ See Attachment 2f.

  g. ☐ The Court finds that the parties have knowingly, intelligently, and voluntarily entered into a stipulation.

3. **Jurisdiction**

  a. ☐ The issue of support for the ☐ petitioner ☐ respondent is reserved for later determination.

  b. ☑ The court terminates jurisdiction over the issue of support for the ☑ petitioner ☐ respondent.

  c. ☐ The court's jurisdiction over the issue of support will end on *(specify date):*

4. **Support amount and payment terms**

  a. The ☑ petitioner ☐ respondent must pay to the ☐ petitioner ☑ respondent

    as ☐ temporary ☑ permanent ☑ spousal support ☐ family support ☐ domestic partner support

    the following amount each month: $ 2272.00

  b. Support payments will begin *(date):* 5/1/2021

  c. Support payments are:

    (1) ☑ payable through *(specify end date):* Tito Barrientos retires from U.S. Border Patrol.

    (2) ☐ payable on the: day of each month.

    (3) ☑ Other *(specify):*

      Payment is to be made 1/2 on first pay period and remaining 1/2 on second pay period.

  d. ☐ Support must be paid by ☐ check, money order, or cash ☐ other method *(specify):*

5. **Earnings assignment**

  a. ☐ An earnings assignment for the support will issue as requested by ☐ petitioner ☐ respondent.
    **Note:** The payor of spousal, family, or domestic partner support is responsible for the payment of support directly to the recipient until support payments are deducted from the earnings, and for any support not paid by the assignment.

  b. ☐ Service of the earnings assignment is stayed provided the payor is not more than *(specify number):* days late in paying spousal, family, or domestic partner support.

6. **Termination (end) of support**

  a. By law, unless the parties otherwise agree in writing, the support payor's obligation to pay support will end when either party dies or the support payee remarries or registers a new domestic partnership.

  b. ☑ Parties' agreement
    The parties agree that the support payor's obligation to pay support will not end as described in 6a. Instead, the support payor's obligation to pay support will continue until *(specify below the terms of your agreement about when the support payee's obligation to pay support will end):*

    Tito Barrientos retires from U.S. Border Patrol.

***THIS IS A COURT ORDER.***

FL-343 [Rev. January 1, 2021]     **SPOUSAL, DOMESTIC PARTNER, OR FAMILY SUPPORT ORDER ATTACHMENT**
*(Family Law)*

FL-343

| PETITIONER: Tito Erick Barrientos | CASE NUMBER: |
| RESPONDENT: Olga Barrientos | EFL003065 |

7. ☐ **Family support orders.** This order is for family support.

   a.  Both parties must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this order.

   b.  The parents must notify the court of any change of information submitted within 10 days of the change by filing an updated form.

   c.  A *Notice of Rights and Responsibilities (Health-Care Costs and Reimbursement Procedures) and Information Sheet on Changing a Child Support Order* (form FL-192) must be attached to the court order.

8. ☐ **Notice of change of employment**

   The parties must inform each other in writing within 10 days of any change of employment, and include the new employer's name, address, and telephone number.

9. ☐ **Duty to become self-supporting**

   a.  Notice: It is the goal of this state that each party must make reasonable good-faith efforts to become self-supporting as provided in Family Code section 4320. Failure to make reasonable good-faith efforts may be one of the factors considered by the court as a basis for modifying or terminating support.

   b.  ☐ The ☐ petitioner ☐ respondent   should make reasonable good-faith efforts to become self-supporting.

   c.  ☐ Other *(specify):*

10. ☐ **Attachment to *Restraining Order After Hearing*** (form DV-130)

   a.  This form is attached to *Restraining Order After Hearing (CLETS-OAH) (Order of Protection)* (form DV-130).

   b.  The orders issued on this form (FL-343) do not expire on termination of the restraining orders issued on form DV-130.

11. ☐ **Other orders or agreements** *(specify):*

---

**NOTICE:** Any party required to pay support must pay interest on overdue amounts at the "legal" rate, which is currently 10 percent.

*THIS IS A COURT ORDER.*

FL-343 [Rev. January 1, 2021]     **SPOUSAL, DOMESTIC PARTNER, OR FAMILY SUPPORT ORDER ATTACHMENT**     Page 3 of 3
(Family Law)

FL-345

| | |
|---|---|
| PETITIONER: Tito Erick Barrientos | CASE NUMBER: |
| RESPONDENT: Olga Barrientos | EFL003065 |

## PROPERTY ORDER ATTACHMENT TO JUDGMENT

1. **Division of community property assets**

   a. ☐ There are no community property assets.

   b. ☐ The court finds that the net value of the community estate is less than $5,000 and that the ☐ petitioner
      ☐ respondent    cannot be found. Under Family Code section 2604, the entire community estate is awarded to the
      ☐ petitioner    ☐ respondent.

   c. ☑ The petitioner will receive the following assets:                                   ☑ See Attachment 1c.

   d. ☑ The respondent will receive the following assets:                                   ☑ See Attachment 1d.

   e. The ☐ petitioner    ☐ respondent    will be responsible for preparing and filing a *Qualified Domestic Relations Order*
      (QDRO) to divide the following plan or retirement account(s) *(specify)*:

      The fee for preparation of the QDRO will be shared as follows:

   f. ☐ Other orders:

   g. ☑ Each spouse or domestic partner will receive the assets listed above as sole and separate property. The parties must
      execute any and all documents required to carry out this division.

2. **Division of community property debts**

   a. ☐ There are no community property debts.

   b. ☐ All community debts have been paid by the ☐ petitioner    ☐ respondent.
      The ☐ petitioner    ☐ respondent    must reimburse the other party:  $
      The payment plan is as follows:

   c. ☑ The petitioner
      (1)  is assigned the debts listed below;
      (2)  is solely responsible for paying the debts listed below; and
      (3)  will not hold the respondent legally responsible for the debts listed below.          ☐ See attachment 2c.

      Any and all debt acquired in TITO's name at anytime.

Form Approved for Optional Use
Judicial Council of California
FL-345 [Rev. January 1, 2021]

**PROPERTY ORDER ATTACHMENT TO JUDGMENT**
**(Family Law)**
**EXHIBIT "4"**

Family Code, §§ 299, 2500–2660
www.courts.ca.gov

FL-345

| PETITIONER: Tito Erick Barrientos | CASE NUMBER: |
| RESPONDENT: Olga Barrientos | EFL003065 |

2.  d.  [✓]  The respondent
    (1)  is assigned the debts listed below;
    (2)  is solely responsible for paying the debts listed below; and
    (3)  will not hold the petitioner legally responsible for the debts listed below.    [ ] See attachment 2d.
    Any and all debts acquired in OLGA's name at any time.

e.  **Notice regarding division of community property (items c. and d.):**
Creditors are not bound by this judgment. If a creditor seeks payment from the party who is not listed as responsible for the debt, that party can file a *Request for Order* (form FL-300) to seek reimbursement from the party who was assigned the debt.

f.  The court reserves jurisdiction to divide any community debts not listed here and to enforce the terms of this judgment. This enforcement may include ordering a defaulting party to reimburse the other party for failing to follow the terms of this judgment.

g.  [ ]  Other orders:

3.  [ ]  **Equalization of division of property and debt orders.** To equalize the division of the community property assets and debts, the  [ ] petitioner  [ ] respondent   must pay to the other the sum of:  $                , payable as follows:

4.  **Separate property**
a.  [✓]  The court confirms the following assets or debts as the sole separate property, or sole responsibility, of the petitioner:
    The 2022 Lexus ES 300, 100% of his VA benefits and any derivatives

b.  [ ]  The court confirms the following assets or debts as the sole separate property, or sole responsibility, of the respondent:

5.  [ ]  The settlement agreement between the parties dated:                 is attached and made a part of this judgment.

6.  [ ]  **Sale of property.** The following property will be offered for sale and sold for the fair market value as soon as a willing buyer can be found, and the net proceeds from the sale will be  [ ] divided equally  [ ] other *(specify):*

7.  [✓]  Other orders *(specify):*
Each party waives the right to and equal division in favor of this equitable division. As such, neither party shall receive an equalization payment.

FL-345 [Rev. January 1, 2021]

**PROPERTY ORDER ATTACHMENT TO JUDGMENT**
(Family Law)

Page 2 of 2

EXHIBIT "4"                 Page 7 of 12

In Re Marriage of Barrientos v. Barrientos
ICSC Case No: EFL003065

ATTACHMENT 1(d) to Property Order Attachment to Judgment (Community Property
Allocated to OLGA)

OLGA will receive the following assets:

1.   Any and all Furniture, Furnishings, appliances and other personal property in her
     possession.

2.   The residence located at 14429 Joaquin Way, Victorville, CA. 92394, and any
     encumbrance thereon, including but not limited to the first mortgage and any lines of
     credit associated with said residence. Moreover, OLGA is to defend TITO and hold
     harmless to any and all encumbrances on said property.   OLGA shall refinance the
     property within 365 days of entry of Judgment to remove TITO's name off the mortgage.
     The parties shall execute any and all documents to effectuate this Agreement within 90
     days of entry of Judgment.

3.   Any and all bank accounts currently in her name.

4.   One-half of the community property interest in TITO's Federal Employees' Retirement
     System (FERS) to be divided pursuant to Brown's Time Rule from date of marriage
     November 25, 1994, to date of separation February 16, 2021.

5.   One-half of the community property interest in TITO's Federal Thrift Savings Plan (TSP)
     to be divided pursuant to Brown's Time Rule from date of marriage November 25, 1994,
     to date of separation February 16, 2021.

6.   The 2019 Toyota Avalon and any debt thereon.

7.   The 1990 Mazda Miata.

8.   The 2004 Ford Tacoma.

9.   The 2012 Toyota Highlander.

10.  The 2017 Toyota Corolla and any encumbrance thereon.

11.  The 2019 Toyota Camry and any encumbrance thereon.

2

In Re Marriage of Barrientos v. Barrientos
ICSC Case No: EFL003065

ATTACHMENT 1(c) to Property Order Attachment to Judgment (Community Property
Allocated to TITO)

TITO will receive the following assets:

1.    Any and all Furniture, Furnishings, appliances and other personal property in his
      possession.

2.    The 2006 GMC Yukon.

3.    Any and all bank accounts currently in his name.

4.    One-half of the community property interest in TITO's Federal Employees' Retirement
      System (FERS) to be divided pursuant to Brown's Time Rule from date of marriage
      November 25, 1994, to date of separation February 16, 2021.

5.    One-half of the community property interest in TITO's Federal Thrift Savings Plan (TSP)
      to be divided pursuant to Brown's Time Rule from date of marriage November 25, 1994,
      to date of separation February 16, 2021.

1

In Re Marriage of Barrientos v. Barrientos
ICSC Case No: EFL003065

ATTACHMENT 1(c) to Property Order Attachment to Judgment (Community Property
Allocated to TITO)

TITO will receive the following assets:

1.    Any and all Furniture, Furnishings, appliances and other personal property in his
      possession.

2.    The 2006 GMC Yukon.

3.    Any and all bank accounts currently in his name.

1

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of __IMPERIAL__

On __04/18/2022__    before me, __MIREYA VILLALOBOS    NOTARY PUBLIC__
(Here insert name and title of the officer)

personally appeared __TITO ERICK BARRIENTOS__

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Signature of Notary Public_

(Notary Seal)

MIREYA VILLALOBOS
COMM. #2333338
Notary Public - California
Imperial County
My Comm. Expires Sep. 12, 2024
NRO1

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

__JUDGMENT AGREEMENT__
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages __13__    Document Date __04/18/2022__

(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

- ☑ Individual (s)
- ☐ Corporate Officer

    (Title)

- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
    - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
    - ❖ Indicate title or type of attached document, number of pages and date.
    - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

---

In Re Marriage of Barrientos v. Barrientos
ICSC Case No: EFL003065

THIS MATTER MAY PROCEED ON THE DEFAULT OR UNCONTESTED CALENDAR
AND BEFORE A COMMISSIONER OR A PRO TEM JUDGE.   THE PARTIES WAIVE
THEIR RIGHTS TO NOTICE OF TRIAL, A STATEMENT OF DECISION, TO MOVE FOR
A NEW TRIAL AND TO APPEAL.

PETITIONER AND RESPONDENT ACKNOWLEDGE BEING FULLY INFORMED OF THE
FACTS RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT AND AS TO
EACH OF THEIR RIGHTS AND RESPONSIBILITIES.   HUSBAND AND WIFE DECLARE
THAT THEY ARE ENTERING THIS AGREEMENT VOLUNTARILY, FREE FROM
FRAUD, COERCION, OR DURESS OF ANY KIND.   EACH PARTY DECLARES THAT HE
OR SHE HAS READ AND FULLY UNDERSTANDS EACH OF THE TERMS OF THIS
AGREEMENT AND HAS HAD A FULL OPPORTUNITY TO SEEK OUT ADVICE OF
LEGAL COUNSEL OF THEIR CHOOSING.

WHEREBY, IT IS HEREBY STIPULATED BY THE PARTIES THAT THE COURT MAY
ENTER THE JUDGMENT TO WHICH THIS STIPULATION IS ATTACHED.   IT IS
STIPULATED THAT ALL ORDERS SET FORTH HEREIN SHALL BE ORDERS OF THE
COURT.

IT IS SO STIPULATED:

DATED: 4/18/2022
_____
Tito Erick Barrientos, Petitioner

DATED: 4/19/2022
_____
Olga Barrientos, Respondent

APPROVED AS TO FORM & CONTENT:

DATED: 4/13/2022
_____
WILLIAMS & SINGH LLP,
Attorneys for Respondent

IT IS SO ORDERED:

DATED: MAY 0 2 2022
_____
ERAN M. BERMUDEZ
JUDGE OF THE SUPERIOR COURT

3

# EXHIBIT 5

# EXHIBIT 5

RECORDING REQUESTED BY:

**DocStar Services, LLC.**

WHEN RECORDED MAIL TO:

Olga Lilia Barrientos
14429 Joaquin Way
Victorville, CA 92394

File No.: 32158 CM

**Recorded in Official Records
San Bernardino County**

**Assessor-Recorder-County Clerk**

## DOC# 2023-0020125

| 01/27/2023 01:26 PM HES | Titles: 1 | Pages: 3 |
| --- | --- | --- |
| | Fees | $20.00 |
| | Taxes | $0.00 |
| I1287 | CA SB2 Fee | $0.00 |
| | Total | $20.00 |

APN: 0394-144-02-0-000

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

(Please fill in document title(s) on this line)

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

**Reason for Exemption:**

☐ Exempt from fee per GC 27388.1 (a) (2); recorded "in connection with" a transfer to the imposition of documentary transfer tax (DTT).

☒ Exempt from fee per GC 27388.1 (a) (2); recorded "in connection with" a transfer of real property that includes a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from fee per GC 27388.1 (a) (1); not related to real property

☐ Exempt from fee per GC 27388.1 for the following reason(s):

Failure to include an exemption reason will result in the imposition of the $75.00 Building Homes and Job Act fee. Fees collected are deposited to the State and may not be available for refund.

I hereby declare under penalty of perjury that the information provided above is true and correct.

Executed this _27th_ day of _January_ , 20 _23_

At _Victorville_ , _California_
City                                                State

(Signature) _____
Olga Lilia Barrientos

THIS COVERSHEET ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
($3.00 Additional Recording Fee Applies)

EXHIBIT "5"                                        Page 1 of 3

RECORDING REQUESTED BY:

## DocStar Services, LLC.

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

Olga Lilia Barrientos
14429 Joaquin Way
Victorville, CA 92394

---

APN:    0394-144-02-0-000
File No.:  32158 CM

This Document has been recorded as an
Accommodation only, it has not been reviewed as
to its accuracy or its effect on title

THE UNDERSIGNED GRANTOR(S) DECLARE(S):

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

"This conveyance is in dissolution
of marriage by one spouse to the
other, R & T 11927."

# GRANT DEED

DOCUMENTARY TRANSFER TAX IS $_____0.00_____ CITY TAX IS $_____0.00_____
_____ Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area  ✓  City of _Victorville_____

For valuable consideration, receipt of which is hereby acknowledged,

Tito E. Barrientos, Ex-Spouse of the Grantee Herein

hereby GRANT(S) to

Olga Lilia Barrientos, an Unmarried Woman

the following described property situated in the _____City of Victorville_____, County of ____San Bernardino____,
State of _____California_____:

Lot 40 of Tract No. 16943 as per map recorded in Book 318, Pages 62-67 inclusive, in the office of
the County recorder of said County.

Commonly known as: 14429 Joaquin Way, Victorville, CA 92394

THE GRANTOR IS EXECUTING THIS INSTRUMENT FOR THE PURPOSE OF RELINQUISHING
ALL OF THE GRANTOR'S RIGHTS, TITLE AND INTEREST INCLUDING, BUT NOT LIMITED TO,
ANY COMMUNITY PROPERTY INTEREST IN AND TO THE LAND DESCRIBED HEREIN AND
PLACE TITLE IN THE NAME OF THE GRANTEE, AS HIS/HER SEPARATE PROPERTY

MAIL TAX STATEMENTS AS DIRECTED ABOVE

**Page 1 of 2**

Dated: January 26, 2023

_____
Tito E. Barrientos

_____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _____California_____ )
                                  ) §
COUNTY OF _____Victorville_____ )

On January 27, 2023 before me, Katia Hernandez _____, Notary Public, personally appeared Tito E. Barrientos*****************************************************************************,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____



Katia Hernandez
COMM. #2300276
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Aug. 04, 2023

**Page 2 of 2**

## UNITED STATES BANKRUPTCY COURT

**Early Meeting of Counsel and Status Conference Instructions
Effective February 17, 2012**

**1**.    <u>**Service of Order.**</u>  A copy of this Order Re: Rule 26(f) Meeting, Initial Disclosures, and

Scheduling Conference must be served with the summons and complaint.  The proof of service

of the summons and complaint must indicate that a copy of this order was served therewith.

**2**.    <u>**Local Bankruptcy Rule 7026-1**</u>.  Compliance with Local Bankruptcy Rule 7026-1

("LBR 7026-1") is required in ALL adversary proceedings.

**3**.    <u>**Rule 26(f) Meeting**</u>.  Unless all defendants default, the parties must meet and confer

pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26(f) Meeting") at least 21

days before the status conference date set forth in the summons.  <u>**The status conference set**</u>

<u>**forth in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this**</u>

<u>**adversary proceeding**</u>.

The parties are jointly responsible for arranging and attending the Rule 26(f) Meeting,

which may be conducted in person or by telephone.  During the Rule 26(f) Meeting, the parties

must, at a minimum:  (a) discuss the nature and basis of their claims and defenses and the

possibilities for a prompt settlement or resolution of the case; (b) make or arrange for the initial

disclosures required by Rule 26(a)(1); and (c) develop a proposed discovery plan.  The

discussion of claims and defenses must be substantive and meaningful.  The parties are directed

to approach the Rule 26(f) Meeting cooperatively and in good faith.

**4**.    <u>**Initial Disclosures**</u>.  Rule 26(a)(1) states that a party must, without awaiting a discovery

request, provide to other parties:

1

a.    The name and, if known, the address and telephone number of each individual
      likely to have discoverable information – along with the subjects of that
      information –  that the disclosing party may use to support its claims or defenses,
      unless the use would be solely for impeachment;

b.    A copy of – or a description by category and location –  of all documents,
      electronically stored information, and tangible things that the disclosing party has
      in its possession, custody, or control and may use to support its claims or
      defenses, unless the use would be solely for impeachment;

c.    A computation of each category of damages claimed by the disclosing party –
      who must also make available for inspection and copying as under Rule 34 the
      documents or other evidentiary material, unless privileged or protected from
      disclosure, on which each computation is based, including materials bearing on
      the nature and extent of injuries suffered; and

d.    For inspection and copying as under Rule 34, any insurance agreement under

      which an insurance business may be liable to satisfy all or part of a possible

      judgment in the action or to indemnify or reimburse for payments made to satisfy

      the judgment.

F.R.Civ.P. 26(a)(1)(A).  Rule 26(a)(1) requires a party to make its initial disclosures based on the

information then reasonably available to it.  A party is not excused from making its disclosures

because it has not fully completed its investigation of the case or because it challenges the

sufficiency of another party's disclosures or because another party has not made its disclosures.

F.R.Civ.P. 26(a)(1)(E).

**5**.    __Alternative Dispute Resolution ("ADR").__  The parties must explore the feasibility of

ADR to reach a settlement or early resolution of the adversary proceeding.  The specific reasons

for any decision not to participate in a form of early ADR must be explained in the Joint Status

Report.  If the parties elect not to participate in an early ADR effort, the court may nonetheless

direct the parties to ADR before trial.

6.    **Discovery Plan.**  At the Rule 26(f) Meeting, the parties must also discuss any issues
about preserving discoverable information and develop a proposed discovery plan.  The
discussion regarding discovery following the initial disclosures must address the relevance of the
discovery sought and the sequence and timing of such discovery, including whether the
discovery will be conducted informally or formally.  The deadlines in the discovery plan must be
mutually agreeable, with a view to achieving resolution of the case with a minimum of expense
and delay.

7.    **Joint Status Report**. Not later than 7 days before the status conference/Rule 16(b)
Scheduling Conference date set forth in the summons, the parties must file a Joint Status Report
in a form substantively identical to LBR **Form F 7016-1.1.**  The Joint Status Report must contain
the information set forth in LBR 7016-1(a)(2), and a statement that the parties have completed
the Rule 26(f) Meeting and made the initial disclosures required by Rule 26(a)(1).  The Joint
Status Report shall also serve as the written report of the Rule 26(f) Meeting.

8.    **Status Conference / Rule 16(b) Scheduling Conference.**  At the Rule 16(b) Scheduling
Conference, the court will review the discovery plan set forth in the Joint Status Report and set
appropriate deadlines.  The court seeks to try all adversary proceedings not later than 18 months
of the filing of the complaint.  Consequently, all deadlines in the schedule, including the
dispositive motion deadline, must be met within 12 to 14 months of the filing of the complaint to
afford adequate time for briefing and ruling prior to the final pretrial conference and trial date.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status
Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all
matters to be covered.

9.    __Default.__  If no response to the complaint is timely filed, plaintiff should request entry of

default by the clerk __prior__ to the status conference date set forth in the summons.  F.R.Civ.P.

55(a).  Plaintiff may also request entry of a default judgment by filing and serving an appropriate

motion.  F.R.Civ.P. 55(b)(2).

10.    __Sanctions.__  Failure to comply with these instructions may subject the responsible party

and/or counsel to sanctions.  The failure of either party to cooperate in the preparation and filing

of a Joint Status Report or appear at the status conference may result in the imposition of

sanctions under LBR 7016-1(f) or (g).


Mark D. Houle

United States Bankruptcy Judge

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ☐ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -** _____ **DIVISION**

| In re: | CASE NO.:<br><br>ADVERSARY NO.:<br><br>CHAPTER: |
|---|---|
| Debtor(s). | |

| | **JOINT STATUS REPORT**<br>**[LBR 7016-1(a)(2)]** |
|---|---|
| Plaintiff(s).<br><br>vs. | DATE:<br>TIME:<br>COURTROOM:<br>ADDRESS: |
| Defendant(s). | |

The parties submit the following JOINT STATUS REPORT in accordance with LBR 7016-1(a)(2):

**A.  <u>PLEADINGS/SERVICE</u>:**

    1.  Have all parties been served with the complaint/counterclaim/cross-claim, etc. (Claims Documents)?  ☐ Yes  ☐ No

    2.  Have all parties filed and served answers to the Claims Documents?  ☐ Yes  ☐ No

    3.  Have all motions addressed to the Claims Documents been resolved?  ☐ Yes  ☐ No

    4.  Have counsel met and conferred in compliance with LBR 7026-1?  ☐ Yes  ☐ No

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

5.  If your answer to any of the four preceding questions is anything <u>other</u> than an unqualified "YES," please explain below (*or on attached page*):

**B.  <u>READINESS FOR TRIAL</u>:**

1.  When will you be ready for trial in this case?

<u>Plaintiff</u>                                                      <u>Defendant</u>

2.  If your answer to the above is more than 4 months after the summons issued in this case, give reasons for further delay.

<u>Plaintiff</u>                                                      <u>Defendant</u>

3.  When do you expect to complete <u>your</u> discovery efforts?

<u>Plaintiff</u>                                                      <u>Defendant</u>

4.  What additional discovery do you require to prepare for trial?

<u>Plaintiff</u>                                                      <u>Defendant</u>

**C.  <u>TRIAL TIME</u>:**

1.  What is your estimate of the time required to present <u>your side of the case</u> at trial (*including rebuttal stage if applicable*)?

<u>Plaintiff</u>                                                      <u>Defendant</u>

2.  How many witnesses do you intend to call at trial (*including opposing parties*)?

<u>Plaintiff</u>                                                      <u>Defendant</u>

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3.  How many exhibits do you anticipate using at trial?

<u>Plaintiff</u>                                        <u>Defendant</u>

## D.  **<u>PRETRIAL CONFERENCE</u>:**

A pretrial conference is usually conducted between a week to a month before trial, at which time a pretrial order will be signed by the court.  [See LBR 7016-1.]  If you believe that a pre-trial conference is not necessary or appropriate in this case, please so note below, stating your reasons:

<u>Plaintiff</u>                                                    <u>Defendant</u>

Pretrial conference ☐ is ☐ is not  requested       Pretrial conference ☐ is ☐ is not  requested
Reasons:                                                Reasons:

<u>Plaintiff</u>                                                    <u>Defendant</u>

Pretrial conference should be set <u>after</u>:         Pretrial conference should be set <u>after</u>:

(*date*) _____                                  (*date*) _____

## E.  **<u>SETTLEMENT</u>:**

1.  What is the status of settlement efforts?

2.  Has this dispute been formally mediated?        ☐ Yes        ☐ No
    If so, when?

3.  Do you want this matter sent to mediation at this time?

<u>Plaintiff</u>                                        <u>Defendant</u>

☐ Yes    ☐ No                                      ☐ Yes    ☐ No

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2015*                          Page 3                          **F 7016-1.STATUS.REPORT**

**F.   FINAL JUDGMENT/ORDER:**

Any party who contests the bankruptcy court's authority to enter a final judgment and/or order in this adversary proceeding must raise its objection below.  Failure to select either box below may be deemed consent.

<u>Plaintiff</u>                                                    <u>Defendant</u>

☐ I do consent                                          ☐ I do consent
☐ I do not consent                                    ☐ I do not consent
to the bankruptcy court's entry of a final judgment          to the bankruptcy court's entry of a final judgment
and/or order in this adversary proceeding.                   and/or order in this adversary proceeding.

**G.   ADDITIONAL COMMENTS/RECOMMENDATIONS RE TRIAL:** (*Use additional page if necessary*)

Respectfully submitted,

Date: _____                                   Date: _____

_____          _____
Printed name of law firm                              Printed name of law firm

_____          _____
Signature                                             Signature

_____          _____
Printed name                                          Printed name

Attorney for: _____          Attorney for: _____

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **JOINT STATUS REPORT [LBR 7016-1(a)(2)]** will be served
or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | _____ | _____ |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 17701 Cowan, Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled: **COMPLAINT [Docket #1]; EARLY MEETING OF COUNSEL AND STATUS CONFERENCE INSTRUCTIONS EFFECTIVE FEBRUARY 17, 2012 ; and JOINT STATUS REPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 27, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Brandon J Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
Robert Whitmore (TR)    rswtrustee@yahoo.com, rwhitmore@ecf.axosfs.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) July 27, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

<u>Defendant</u>
Olga Lilia Barrientos
14429 Joaquin Way
Victorville, CA 92394

<u>Debtor</u>
Tito Barrientos
14429 Joaquin Way
Victorville, CA 92394

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 27, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Mark Houle, USBC, 3420 Twelfth Street, Suite 325, Riverside, CA 92501
(SUSPENDED DUE TO COVID-19 PROTOCOLS)

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 27, 2023 | Kerry A. Murphy | /s/Kerry A. Murphy |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016

**F 7004–1.SUMMONS.ADV.PROC**